**The STATE of Texas, State,**

v.

**Steven Lyle STEVENSON, Appellee.**

**No. 2–94–510–CR.**

Court of Appeals of Texas,
Fort Worth.

May 27, 1999.

Tim Curry, Tarrant County Criminal Dist. Atty., Betty Marshall, Charles M. Mallin, Asst. Chiefs of Appellate Section, Danielle A. Legault, Deborah Kernan, Mike Casillas, Asst. Dist. Attys., Fort Worth, for appellant.

Alex Gonzalez, Jr., Fort Worth, for appellee.

Panel B: DAY, DAUPHINOT, and RICHARDS, JJ.

## OPINION ON REMAND

LEE ANN DAUPHINOT, Justice.

In a single point, the State appealed the trial court's granting Appellee Steven Lyle Stevenson's motion to suppress evidence. On original submission, this court affirmed the trial court's ruling as modified.[1] The court of criminal appeals reversed and remanded the case to this court for proceedings consistent with its opinion.[2]

## FACTUAL BACKGROUND

On May 12, 1992, Appellee and his wife were involved in a one-car accident with a road sign. Both the car and the road sign were damaged. The police were called,

---

1. *See State v. Stevenson*, No. 2–94–510–CR, slip op. at 6 (Tex.App.—Fort Worth Oct.5, 1995) (not designated for publication), *rev'd*, 958 S.W.2d 824 (Tex.Crim.App.1997).

2. *See State v. Stevenson*, 958 S.W.2d 824, 829 (Tex.Crim.App.1997).

and Officer Hilliard and Officer West arrived on the scene shortly thereafter to conduct an accident investigation. The officers found the car in the parking lot of a convenience store. Hilliard asked Appellee for identification and then questioned him about who was driving the car. Appellee responded that his wife was driving. Hilliard then asked Appellee's wife the same question, and she responded that she was driving. Hilliard noticed that Appellee's wife was injured. Her injuries were so severe that Hilliard called for an ambulance.

While they waited for the ambulance, Hilliard and West examined the car. They found the front passenger-side window completely smashed out. Hilliard and West concluded that Appellee's wife's injuries were consistent with her being the passenger in the car. Convinced that Appellee was lying about being the passenger, Hilliard again asked him who was driving. Appellee then admitted that he had indeed been driving. Only after Appellee admitted that he was driving did Hilliard suddenly notice that Appellee smelled of alcohol. After Appellee answered his questions, Hilliard administered field sobriety tests. Appellee failed the tests, and Hilliard placed him under formal arrest for driving while intoxicated. At no time before formal arrest did either officer give Appellee his *Miranda*[3] warnings.

## MOTION TO SUPPRESS

Appellee filed a motion to suppress, alleging (1) that his statements to the officers were privileged under section 47 of article 6701d of the Texas Revised Civil Statutes[4] and (2) that his right against self-incrimination was violated by the conjunction of the facts of the case with sections 39, 40, and 45(a).[5] The trial court initially granted the motion to suppress but later withdrew its ruling pending a live hearing.

At the hearing, both the State and Appellee raised the issue of whether Appellee was in custody for *Miranda* purposes at the time Officer Hilliard questioned him about the accident. Appellee contended that the various provisions of article 6701d[6] required him, as driver of the car, to give self-incriminating information to the police. He cited *Lykins v. State*,[7] arguing that such a requirement is unconstitutional. The State argued that the accident report was a public record after 180 days, that a person is not required to remain at an accident scene even when the property damage is great or a person is injured, and that Hilliard's interrogation of Appellee was not custodial.

After the hearing, the trial court regranted the motion and suppressed all statements made by Appellee during Hilliard's investigation. The written order granting the motion to suppress contained no specific reason for doing so. In his oral comments, the trial judge focused upon

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. Act of June 18, 1947, 50th Leg., R.S., ch. 421, § 47, 1947 Tex. Gen. Laws 967, 975 (current version at TEX. TRANSP. CODE ANN. § 550.065 (Vernon 1999)). All references to sections of article 6701d of the Texas Revised Civil Statutes are to the version of article 6701d that was in effect at the time the offense was committed. Article 6701d was repealed effective September 1, 1995, and recodified in chapter 550 of the Texas Transportation Code without substantive change to the law. *See* Act of May 1, 1995, 74th Leg., R.S., ch. 165, §§ 24(a), 25, 27, 1995 Tex. Gen. Laws 1025, 1870–71.

5. Act of June 18, 1947, 50th Leg., R.S., ch. 421, §§ 39, 40, 45(a), 1947 Tex. Gen. Laws 967, 974–75 (current version at TEX. TRANSP. CODE ANN. §§ 550.022, .023, .064 (Vernon 1999)).

6. Act of June 18, 1947, 50th Leg., R.S., ch. 421, §§ 38–49, 1947 Tex. Gen. Laws 967, 974–76 (current version at TEX. TRANSP. CODE ANN. §§ 550.021–.081 (Vernon 1999)).

7. *Lykins v. State*, 784 S.W.2d 32, 37 (Tex. Crim.App.1989).

two issues, the privilege argument and the failure to give the *Miranda* warning. The trial judge specifically inquired, "[A]t any time before you arrested Mr. Stevenson, did you advise him of his Miranda warnings?" Again, he inquired, "At any time before you arrested Mr. Stevenson for DWI did you advise him of his Miranda warnings?" A third time the trial judge inquired, "At any time before you arrested Mr. Stevenson for DWI did you advise him of any warnings regarding whatever rights he may have under the Constitution of the State of Texas?" These questions indicate a clear concern that Hilliard did not provide Appellee the required warnings. The trial court further pointed out that section 47[8] seems to give a privilege and to take it away, stating, "Certainly a question that needs to be resolved in our jurisprudence. And to aid in that resolution, I will grant your motion to suppress."

## OUR ORIGINAL OPINION

In our original opinion, we held that "[w]hile the statutes, in and of themselves did not render Appellee in custody, the trial court found the combination of sections 39, 40, and 45 and the shift from an accident investigation to a DWI investigation rendered Appellee in custody."[9] In so holding, we relied on Hilliard's testimony:

Q ... You arrived at the scene -

A. Uh-huh.

Q. —because they called in and said there was an accident. You start doing an accident investigation as a result of the accident that's been reported?

A. Yes, sir.

Q. And you're conducting that investigation *to fill out a form that's a report that is an accident report that is sent out to the State;* is that correct?

A. Yes, sir.

Q. And it deals with how the accident happened, the people that are involved in the accident, driver's licenses, auto registration, all of those things?

A. Yes, sir. . . .

Q. And you filled out the accident investigation report?

A. No.

Q. You didn't fill this out?

A. I don't complete these on the scene. I get the information that I need to do so that we can clear the scene, and I fill the rest of it out as I have time. . . .

Q ... Then the DWI investigation started and then [the DWI investigation and the accident investigation] all became intertwined; is that correct? ·

A. Right. As a matter of fact, one of the investigative things I have to find out on an accident report is *the cause of [the] accident.* And I listed on the accident report under influence of liquor as the cause.

Q. Right.

A. That's something that has to be determined during the investigation. [Emphases added.]

Appellee argued that any appellate court, using the traditional four-factor test for determining custody, would find that he was in police custody at the time he answered Hilliard's questions.[10] This court utilized this four-factor test in our original 1995 opinion, not having the benefit of the 1996 *Dowthitt*[11] decision, and

8. Act of June 18, 1947, 50th Leg., R.S., ch. 421, § 47, 1947 Tex. Gen. Laws 967, 975 (current version at TEX. TRANSP. CODE ANN. § 550.065 (Vernon 1999)).

9. *Stevenson,* No. 2–94–510–CR, slip op. at 6.

10. *See Dowthitt v. State,* 931 S.W.2d 244, 254 (Tex.Crim.App.1996) (noting that court of criminal appeals historically has recognized four factors relevant to determining custody:

(1) probable cause to arrest, (2) subjective intent of police, (3) focus of investigation, and (4) subjective belief of defendant).

11. *Id.* (holding that subjective intent of police and subjective belief of defendant "have become irrelevant except to the extent that they may be manifested in the words or actions of law enforcement officials; the custody determination is based entirely upon objective circumstances.").

concluded that Appellee's admission that he was driving was the product of custodial interrogation.[12] Because Hilliard had not yet given Appellee *Miranda* warnings, we found that the trial court was correct in suppressing his admission.[13]

The court of criminal appeals determined that this court "found that the roadside encounter in the present case escalated into custody after Hilliard discovered that appellee's wife's injuries were consistent with her being the passenger rather than the driver."[14] The court of criminal appeals held that this court erred as a matter of law in analyzing the custodial interrogation issue.[15] In its opinion, the court of criminal appeals analyzed the custodial interrogation issue under both the accident statutes in article 6701d and *Miranda* and its progeny.

## STANDARD OF REVIEW

The Texas Constitution places a heavy burden on the courts of appeals. Once we determine the facts of a specific case, "the decision of [the court of appeals] shall be conclusive on all questions of fact brought before them on appeal or error."[16] We therefore cannot rely on a higher court to correct any misunderstanding of the facts of which we may be guilty.

The court of criminal appeals recently held that the appropriate standard of review of a trial court's decision on a federal constitutional speedy trial claim is a bifurcated standard of review, under which the reviewing court applies an abuse of discretion standard for the factual components and a de novo standard for the legal components of the trial court's decision.[17] A speedy trial claim is a mixed question of law and fact, as is the issue in this case, whether Appellee was in custody at the time he made the statements to Hilliard. We therefore shall apply a bifurcated standard of review.

The amount of deference an appellate court affords to a trial court's ruling on a mixed question of law and fact often is determined by which judicial actor is in a better position to decide the issue.[18] "If the issue involves the credibility of a witness, thereby making the evaluation of that witness' demeanor important, compelling reasons exist for allowing the trial court to apply the law to the facts."[19] As a general rule, we "should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor."[20] And we should afford the same amount of deference to the trial court's rulings on mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor.[21]

When, as in this case, we are faced with a mixed question of law and fact, the critical inquiry under *Guzman* is whether the question "turns" on an evaluation of credibility and demeanor.[22] The trial court's ruling on a mixed question of law and fact often depends in large part on how the trial court evaluates the credibility

---

**12.** *See Stevenson,* No. 2–94–510–CR, slip op. at 5–6.

**13.** *See id.* at 6.

**14.** *Stevenson,* 958 S.W.2d at 829.

**15.** *See id.* at 827.

**16.** Tex. Const. art. V, § 6.

**17.** *See State v. Munoz,* 991 S.W.2d 818, 820–21 (Tex.Crim.App. 1999).

**18.** *See Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Crim.App.1997) (citing *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985)).

**19.** *Id.*

**20.** *Id.* at 89.

**21.** *See id.*

**22.** *See Loserth v. State,* 963 S.W.2d 770, 772 (Tex.Crim.App.1998).

and demeanor of certain witnesses.[23] "For instance, the credibility of the arresting police officer would certainly be weighed heavily by a trial court in a ruling on a motion to suppress evidence based upon an alleged lack of probable cause."[24] The court of criminal appeals has held that a question turns on an evaluation of credibility and demeanor when the testimony of one or more witnesses, if believed, is always enough to add up to what is needed to decide the substantive issue.[25]

■ In this case, Hilliard was the only witness at the motion to suppress hearing. His testimony, if believed, is enough to add up to what is needed to decide whether Appellee was in custody. This mixed question of law and fact therefore turns on an evaluation of Hilliard's credibility and demeanor. Unlike the trial judge, we are not in a position to judge Hilliard's credibility and demeanor. Accordingly, we should afford the trial court's decision almost total deference and should reverse only if the trial court abused its discretion.

## A. THE ACCIDENT STATUTES

■ As the court of criminal appeals instructs us, "[i]f the language of a statute is unambiguous, we give effect to its plain meaning unless doing so would lead to absurd results."[26]

### Sections 38, 39, and 40

Appellee argued that his right against self-incrimination was violated by the conjunction of the facts of the case with certain provisions of article 6701d. The court of criminal appeals, noting that section 39[27] applies to accidents " 'resulting *only* in damage to a vehicle,' " held that section 39 is inapplicable to this case because Appellee's wife was injured in the accident.[28] Its opinion points out, however, that section 38,[29] concerning accidents involving death or personal injuries, does apply to this case.[30]

Section 38(a) requires the driver of any vehicle involved in an accident resulting in injury to or death of any person to immediately stop and remain at the scene of the accident until the driver has fulfilled the requirements of section 40.[31] Section 38(b) provides penalties for failing to fulfill these requirements.[32] Section 40 requires that the driver place himself behind the wheel of the vehicle:

> The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address, and the registration number of the vehicle he is driving and the name of his motor vehicle liability insurer, and shall upon request and if available exhibit his operator's, commercial operator's, or chauffeur's license to the person struck or the driver or occupant of or person attending any vehicle colliding with and shall render to any person injured in such accident reasonable assistance, including

23. *See id.*

24. *Id.*

25. *See id.* at 773.

26. *Stevenson,* 958 S.W.2d at 827 (citing *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim. App.1991)).

27. Act of June 18, 1947, 50th Leg., R.S., ch. 421, § 39, 1947 Tex. Gen. Laws 967, 974 (current version at Tex. Transp. Code Ann. § 550.022 (Vernon 1999)).

28. *Stevenson,* 958 S.W.2d at 827.

29. Act of June 18, 1947, 50th Leg., R.S., ch. 421, § 38, 1947 Tex. Gen. Laws 967, 974 (current version at Tex. Transp. Code Ann. § 550.021 (Vernon 1999)).

30. *See Stevenson,* 958 S.W.2d at 827.

31. *See* Act of June 18, 1947, 50th Leg., R.S., ch. 421, § 38(a), 1947 Tex. Gen. Laws 967, 974 (current version at Tex. Transp. Code Ann. § 550.021(a)-(b) (Vernon 1999)).

32. *See* Act of June 18, 1947, 50th Leg., R.S., ch. 421, § 38(b), 1947 Tex. Gen. Laws 967, 974 (current version at Tex. Transp. Code Ann. § 550.021(c) (Vernon 1999)).

the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person.[33]

The court of criminal appeals held that because the only persons involved in this accident were Appellee and his wife, "[p]resumably, appellee and his wife already have the information required by § 40."[34] The court of criminal appeals further held that sections "38 and 40 do not require a driver to give any information to law enforcement officials."[35] Accordingly, the court of criminal appeals held that "[b]ecause § 38 merely requires a driver to remain at the scene long enough to impart the information required by § 40, those statutes did not require appellee to remain at the scene at all since all the injured parties already possessed the requisite information."[36]

### Sections 43 and 47

We would also point out that two other sections of article 6701d support the trial court's granting Appellee's motion to suppress his statement to Hilliard. Section 43(a) requires the driver of a vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle to the extent that it cannot be normally and safely driven to immediately by the quickest means of communication give notice of the accident to the appropriate law enforcement authority.[37] The court of criminal appeals held that al-

though section 43 requires the driver to give notice of the accident to relevant law enforcement authorities, section 43 does not require the driver to report his identity or to give the officer any further information.[38] The plain meaning of this section is unambiguous. The driver of the vehicle, not his agent, not his designee, must give notice of the accident to the appropriate law enforcement authority.

Appellee argued at the motion to suppress hearing and on appeal that section 47 creates a privilege for all information relating to the accident but provided to the officer as part of the accident investigation. Specifically, section 47 provides that

[a]ll accident reports made by persons involved in accidents, by garages, or peace officers shall be without prejudice to the individual so reporting and shall be privileged and for the confidential use of the Department ... except that the Department may disclose the identity of a person involved in an accident when such identity is not otherwise known or when such person denies his presence at such accident....[39]

The court of criminal appeals dismissed this argument, holding that " § 47(a) states that accident reports 'shall be privileged and for confidential use' of various government agencies, and specifies various persons and agencies to whom a report may be released. § 47(c), however, provides that after 180 days accident reports become public records."[40] Although the court of criminal appeals applied section 47(c), this section was not a part of the version of article 6701d in effect at the

**33.** Act of June 18, 1947, 50 th Leg., R.S., ch. 421, § 40, 1947 Tex. Gen. Laws 967, 974 (current version at Tex. Transp. Code Ann. § 550.023 (Vernon 1999)).

**34.** *Stevenson*, 958 S.W.2d at 827.

**35.** *Id.*

**36.** *Id.*

**37.** *See* Act of June 18, 1947, 50 th Leg., R.S., ch. 421, § 43, 1947 Tex. Gen. Laws 967, 975

(current version at Tex. Transp. Code Ann. § 550.026 (Vernon 1999)).

**38.** *See Stevenson*, 958 S.W.2d at 827–28.

**39.** Act of June 18, 1947, 50 th Leg., R.S., ch. 421, § 47, 1947 Tex. Gen. Laws 967, 975 (current version at Tex Transp. Code Ann. § 550.065 (Vernon 1999)).

**40.** *Stevenson*, 958 S.W.2d at 826 n. 2.

time of the offense in this case. And section 47(c) applies only to requests for accident reports made on or after September 1, 1993.[41] Furthermore, the court of criminal appeals did not address the provision in section 47 as it existed in 1992 that all accident reports shall be without prejudice to the individual so reporting.

### Application of Holding of Court of Criminal Appeals

■ The court of criminal appeals repeatedly has held that the wording of section 40 is unambiguous and requires that the driver shall stop, provide the required information, and render aid.[42] "Shall" imposes a duty and therefore is mandatory, not discretionary or optional.[43] The mandate of section 40 is unequivocal, and the statute provides no exceptions. The law is well settled that the mere failure to stop is a criminal offense, and the failure to render aid and the failure to provide the required information are separate methods of committing an offense.[44] That is, the duty is three-fold: to stop, to render aid, and to provide information.

In the case before us, Appellee was the driver of a vehicle involved in a one-car collision with a road sign. As a result of the collision, Appellee's wife was so seriously injured that Officer Hilliard called for an ambulance. At the time of the accident, the law was well settled that Appellee was required to stop at the scene of the accident. This duty attached by statute under sections 38 and 40. In addition to stopping, Appellee was required by statute not only to provide information, but

also to "render to any person injured in such accident reasonable assistance."[45] Clearly, because his wife was injured, Appellee had a duty to remain at the scene of the accident until the ambulance arrived. Even if Appellee had left the scene immediately after the officers arrived and Appellee had provided the required information regarding damage to the road sign, he could not have transported his wife to the hospital without delaying her treatment. Once the officers called for the ambulance, Appellee had to remain at the scene. Otherwise, he would have deprived his wife of *reasonable* medical assistance in violation of section 40.

The court of criminal appeals, however, has set forth new rules for applying sections 38 and 40. The court of criminal appeals concluded that, despite the mandate of sections 38 and 40, Appellee was not required even to stop at the scene, much less to remain there.[46] The court of criminal appeals stated that section 38 merely requires a driver to remain at the scene of an accident only long enough to impart the information required by section 40.[47] Although not reflected by the evidence, the court held that sections 38 and 40 "did not require appellee to remain at the scene at all since all the injured parties already possessed the requisite information."[48] Additionally, the court held that "[e]ven if his wife did not possess some of the information, *because she occupied the same vehicle as appellee, the required information could have been conveyed with-*

---

**41.** *See* Act of May 21, 1993, 73 rd Leg., R.S., ch. 993, § 2, 1993 Tex. Gen. Laws 4344, 4346.

**42.** *See, e.g., Spradling v. State*, 773 S.W.2d 553, 556–57 (Tex.Crim.App.1989).

**43.** *See* Tex. Gov't Code Ann. § 311.016(2) (Vernon 1998).

**44.** *See Allen v. State*, 971 S.W.2d 715, 719 (Tex.App.—Houston [14 th Dist.] 1998, no pet.) (holding that it is an offense to fail to stop and render reasonable assistance and

that failing to stop and give certain specified information is a separate offense).

**45.** Act of June 18, 1947, 50 th Leg., R.S., ch. 421, § 40, 1947 Tex. Gen. Laws 967, 974 (current version at Tex. Transp. Code Ann. § 550.023 (Vernon 1999)).

**46.** *See Stevenson*, 958 S.W.2d at 827.

**47.** *See id.*

**48.** *Id.*

*out stopping the vehicle."* [49]

We understand that the court of criminal appeals, with this opinion, is implicitly overruling prior case law, under which a defendant was required to remain at the scene after an accident even if the driver of the other vehicle had access to the required information. In *Morris v. State*,[50] the defendant gave the other driver her name and telephone number, but did not provide her vehicle registration number, her driver's license number, or her insurance information.[51] She instead left her car at the scene of the accident.[52] Relying on existing law, the Dallas Court of Appeals held that a complainant has no duty to independently take notice of the defendant's vehicle registration number, even though it was clearly visible.[53] A defendant has a mandatory, statutory duty under sections 39 and 40 to "give" the required information to any other person involved in the accident.[54]

In *Steen v. State*, the court of criminal appeals held that there does not even have to be a collision for one party to be liable under the failure to stop and render aid statute.[55] Courts have also held that a defendant may be prosecuted for failure to stop and render aid even when the injured person is a passenger in the vehicle driven by the defendant.[56] A driver of a vehicle that is "involved" in an accident, even when the only person injured is a passenger, is nonetheless required by statute to stop.[57]

We must presume, however, that the court of criminal appeals is cognizant of the provisions of sections 38 and 40 and took into consideration the mandate of section 38(b) in holding that the only reason a driver is required to stop after an accident is to provide information. We understand the court of criminal appeals to hold that, because the person injured in this case was Appellee's spouse, a presumption is created that the spouse already possesses the information that the driver must provide. Additionally, because the injured person was Appellee's passenger, Appellee was relieved of the statutory duty to stop because "the required information could have been conveyed without stopping the vehicle." [58]

The court of criminal appeals does not address the second requirement of section 40, the duty to render aid, but holds that, under the facts of this case in which the injured person was both spouse and passenger of Appellee, he was relieved of the duty to stop. The court does say, however, that the only reason Appellee was required to remain at the scene was because Hilliard arrived and began his accident investigation before Appellee left the scene.[59] It is unclear from the record whether the car was capable of being driven. Nor does Appellee address the issue of his duty to provide information to Hilliard in relation to the damaged sign. But we must conclude that if the only reason Appellee was not free to leave was because Hilliard was investigating the accident, Appellee was under no obligation to remain at the scene so that his wife could be treated for her injuries.

As for the other applicable sections of article 6701d, when section 43 is read in conjunction with section 47, it is clear that,

49. *Id.* at 827 n. 4 (emphasis added).

50. *Morris v. State*, 786 S.W.2d 451 (Tex. App.—Dallas 1990, pet. ref'd).

51. *See id.* at 455.

52. *See id.*

53. *See id.*

54. *See id.*

55. *Steen v. State*, 640 S.W.2d 912, 914 (Tex. Crim.App.1982).

56. *See, e.g., Rivas v. State*, 787 S.W.2d 113, 115 (Tex.App.—Dallas 1990, no pet.).

57. *See id.* at 115–16.

58. *Stevenson*, 958 S.W.2d at 827 n. 4.

59. *See id.* at 828.

while the driver is not required to give his name, he is required to admit that he is the driver of the vehicle involved in the accident. This accident resulted in injury to someone, Appellee's wife. Section 43 therefore required Appellee, as the driver, to give notice of the accident to the appropriate law enforcement authority. Because the State failed to prove that Appellee had made the initial call to report the accident, the State cannot claim on appeal that Appellee was somehow relieved of his burden of speaking with Hilliard. The law required Appellee to place himself behind the wheel of the vehicle involved in the accident.

Furthermore, section 47 does not merely state that the accident report is privileged. It also provides that the accident report shall be without prejudice to the person reporting. The legislature does not limit the application of section 47 to written reports. Were we as a court to do so, it would violate the separation of powers that assigns to the legislature alone the authority to make law. Section 47 therefore prohibits the use of the section 43 report against the reporting person. In the context of the case before us, section 47 acts as an exclusionary rule. Although the accident report may be used against a person who denies his presence at the scene of the accident, Appellee did not deny his presence. Because section 43 requires the driver to place himself behind the wheel by giving notice of the accident to law enforcement authorities, and because section 40 requires the driver to give his name, using the accident report in court against the defendant would be a violation of the state constitutional provision that forbids requiring a defendant to provide evidence against himself.

60. *Id.*

61. *See id.*

62. *Id.*

63. *Miranda,* 384 U.S. at 436, 86 S.Ct. at 1602.

### Summary

The court of criminal appeals held that Appellee "was not required under law to make any of the oral statements that he made to Officer Hilliard. Nor did the statutes require appellee to remain at the scene under the circumstances of this particular accident." [60] In all, the court of criminal appeals concluded that article 6701d had no bearing on Appellee's duty to stop, imposed no duty to answer questions, and had no effect on the legality of Appellee's oral statements.[61]

 Because a decision of the court of criminal appeals is binding precedent, we are compelled to comply with its dictates. Under the controlling precedent of *State v. Stevenson,*[62] therefore, we are bound to hold that when Appellee, as the driver of the vehicle, was involved in an accident and when the person injured was presumed to have the information required by section 40 and was his passenger, Appellee was not required to comply with the statutes that require him to stop at the scene, to provide information, and to render aid. Furthermore, the court of criminal appeals requires us to hold that the accident report itself and Appellee's statements are not privileged based on sections 43 and 47 and therefore cannot be suppressed, despite the provisions of the statute in effect at the time.

### B. *MIRANDA*

The court of criminal appeals also analyzed the custodial interrogation issue under *Miranda.*[63]

### Determination of Custody

 Police are required to advise a person who is interrogated while in custody of that person's right against self-incrimination regardless of whether the person is under formal arrest.[64] Warnings

64. *See Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977); *Melton v. State,* 790 S.W.2d 322, 325 (Tex.Crim.App.1990); *Wicker v. State,* 740 S.W.2d 779, 786 (Tex.Crim.App.1987), *cert.*

are not required for those outside of custody who are questioned by the police.[65] Warnings are also not required for those in custody who volunteer statements not in response to police questions.[66] The United States Supreme Court defined custodial interrogation in *Miranda* as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."[67] We do not base our determination of custody upon whether a police officer has spoken the words "arrest" or "in custody."[68]

▮ Even though the State is Appellant, we may not find the challenged statement admissible on a theory that was not presented to the trial court.[69] The State argued at the motion to suppress hearing and on appeal that, because Appellee's statements were obtained in a "non-custodial, traffic-stop setting, *Miranda* does not apply." The court of criminal appeals also describes Hilliard's investigation as a traffic stop, stating that "Appellee was required to remain at the scene pursuant to an investigative stop conducted by Hilliard."[70]

Relying on *Berkemer v. McCarty*,[71] the State contends that roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute custodial interrogation triggering *Miranda*. Also relying on *Berkemer*, the court of

criminal appeals notes that a traffic stop does not constitute custody for *Miranda* purposes.[72] The State seems to conclude that questioning during a traffic stop can never be considered custodial interrogation. A careful reading of *Berkemer*, however, does not support that conclusion.

The *Berkemer* Court points out that most routine traffic stops involve only one or at the most two officers and are temporary and brief.[73] The Court held that persons temporarily detained pursuant to ordinary traffic stops are not in custody for *Miranda* purposes.[74] The Court, however, recognized that some ordinary traffic stops escalate into custody: "If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*."[75]

▮ The court of criminal appeals historically has recognized four factors relevant to determining custody: (1) probable cause to arrest, (2) the subjective intent of the police, (3) the focus of the investigation, and (4) the subjective belief of the defendant.[76] The court, however, discontinued this practice in *Dowthitt*, holding that the subjective intent of the police and the subjective belief of the defendant "have become irrelevant except to the extent that they may be manifested in the

denied, 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 278 (1988).

65. *See Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714; *Wicker*, 740 S.W.2d at 786.

66. *See Granviel v. State*, 723 S.W.2d 141, 146 (Tex.Crim.App.1986), cert. denied, 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987).

67. *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612.

68. *See Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714.

69. *See State v. Mercado*, 972 S.W.2d 75, 78 (Tex.Crim.App.1998) ("Therefore we hold that in cases in which the State is the party appealing, the basic principle of appellate jurisprudence that points not argued at trial are

deemed to be waived applies equally to the State and the defense.").

70. *Stevenson*, 958 S.W.2d at 828.

71. *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984).

72. *See Stevenson*, 958 S.W.2d at 828.

73. *See Berkemer*, 468 U.S. at 437–38, 104 S.Ct. at 3149.

74. *See id.* at 440, 104 S.Ct. at 3150.

75. *Id.*, 468 U.S. 420, 104 S.Ct. at 3150.

76. *See Dowthitt*, 931 S.W.2d at 254.

words or actions of law enforcement officials."[77] Now the custody determination must be made on an ad hoc basis and is based entirely upon objective circumstances.[78]

### Application of Law to Facts

The trial court in this case did not make findings of fact or conclusions of law but rather made an unequivocal ruling to suppress Appellee's statement. In deciding to suppress Appellee's statement, the trial judge stated that this case presents "a question that needs to be resolved in our jurisprudence. And to aid in that resolution, I will grant your motion to suppress." But the law is well settled that the motion to suppress could be granted only if the trial court found that the statement was the result of an unconstitutional statute or the result of custodial interrogation without the proper warnings having been given. Because the trial judge did not find article 6701d unconstitutional, we can only conclude that he found that Appellee was in custody, not as a matter of law, but as a matter of fact, at the time he made the statement in question.

The court of criminal appeals analyzes Hilliard's investigation as a routine traffic stop. The case before this court, however, does not involve a routine traffic stop or, for that matter, any kind of traffic stop. Officer Hilliard did not stop or pull over Appellee's car. This case involves an investigation of a collision of a passenger car with government property, a road sign. At the least, Hilliard's questioning was a police investigation of reckless damage or destruction of property, a Class C misdemeanor.[79]

The undisputed facts before the trial judge were that Appellee's car collided with a road sign and that both the car and the sign sustained damage. Someone reported the wreck to the police. Appellee and his wife waited for the police and did not flee the scene. Hilliard and West are the police officers who were dispatched to the scene of the collision. The collision occurred at approximately 7:20 p.m., and Hilliard and West arrived in a marked patrol car at 7:38 p.m.

When the officers first arrived at the scene, they were conducting an accident investigation, not a DWI investigation. Immediately after they arrived at the scene, they questioned Appellee. Because Appellee's wife was injured and bleeding, Hilliard called for an ambulance. While waiting for the ambulance, Hilliard looked at the car and noticed that the right front passenger's window was smashed out. Based on Appellee's wife's injuries and the damage to the car, Hilliard "knew that she wasn't the one driving the car."

Hilliard then went back and talked to Appellee's wife again. He then questioned Appellee again, at which point Appellee admitted that he had been driving the car. Because Hilliard smelled alcohol on Appellee's breath, the officers performed field sobriety tests, which Appellee failed. Hilliard formally arrested Appellee at 8:21 p.m., almost an hour into the investigation.

The issue of when Hilliard first smelled alcohol on Appellee requires an evaluation of Hilliard's credibility and demeanor. This duty is the sole province of the trial judge in this case. Hilliard testified that he did not smell alcohol on Appellee's breath until after Appellee had admitted he was driving the car: "because of [Appellee's] appearance, because of the alcoholic odor that I smelled on his breath *after he admitted he was the driver of the vehicle*, we performed field sobriety tests." [Emphasis added.] Hilliard testified specifically that Appellee was not in custody when he admitted to Hilliard that he had been driving the car. We know of no law

---

77. *Id.; see also Stansbury v. California*, 511 U.S. 318, 322–25, 114 S.Ct. 1526, 1528–30, 128 L.Ed.2d 293 (1994).

78. *See Dowthitt*, 931 S.W.2d at 254–55.

79. *See* Tex. Penal Code Ann. § 28.04 (Vernon 1994).

that requires the trial court to believe a witness simply because that witness is a police officer.

We can conclude that the trial judge is well aware of the law. We can also conclude that the trial judge is aware that the product of improper interrogation is nevertheless admissible unless the statement was made while the speaker was in custody. Clearly concerned about whether Appellee was advised of his constitutional rights as required by *Miranda* and by Texas law, the trial judge personally questioned Hilliard:

> THE COURT: Officer Hilliard, just let me—just for the purposes of this proceeding and for the record, at any time before you arrested Mr. Stevenson, did you advise him of his Miranda warnings?
>
> THE WITNESS: No, sir.
>
> THE COURT: At any time before you arrested Mr. Stevenson for DWI— that wasn't really my question. At any time before you arrested Mr. Stevenson for DWI did you advise him of his Miranda warnings?
>
> THE WITNESS: No, sir.
>
> THE COURT: At any time before you arrested Mr. Stevenson for DWI did you advise him of any warnings regarding whatever rights he may have under the Constitution of the State of Texas?
>
> THE WITNESS: No, sir.

Two of the traditional four factors for determining custody that Appellee cites are the subjective intent of the police to hold the suspect and the subjective belief of a defendant as to the status of his freedom.[80] In response to Appellee's argument that both he and Hilliard subjectively believed that he was in custody when he admitted to being the driver of the car, the court of criminal appeals stat-

ed that "[t]hese contentions are belied by the record" and that "[i]n any event, the subjective beliefs of appellee and Hilliard are irrelevant."[81] The court, however, does conclude that "Appellee was required to remain at the scene pursuant to an investigative stop conducted by Hilliard."[82] We understand the court of criminal appeals to instruct the trial and intermediate appellate courts that, even if both the police officer and the defendant testify that they believed that the defendant was not free to leave, we are to give that testimony no weight and are to make that determination instead.

### Summary

Although Appellee was clearly the focus of Hilliard's investigation once the officers concluded that Appellee was the driver, and although Appellee and Hilliard believed Appellee was not free to leave, the court of criminal appeals held that Appellee was not subjected to treatment that rendered him in custody. The court of criminal appeals concludes that "[a]t most, the accident investigation may have escalated from a consensual encounter to an investigative detention. But, mere focus upon the defendant *did not convert the investigation into an arrest.*"[83]

 *Miranda* protections are triggered when "a person has been taken into custody *or otherwise deprived of his freedom of action in any significant way.*"[84] An arrest is not necessary to trigger *Miranda.* The court of criminal appeals held that although "the accident investigation may have escalated from a consensual encounter to an investigative detention ... mere focus upon the defendant did not convert the investigation into an arrest."[85] Consequently, pursuant to the mandate of

---

80. *See Stevenson,* 958 S.W.2d at 826.

81. *Id.* at 829 n. 7.

82. *Id.* at 828.

83. *Id.* at 829 (emphasis added).

84. *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612 (emphasis added).

85. *Stevenson,* 958 S.W.2d at 829.

the court of criminal appeals, we hold that Appellee was not entitled to the protections of *Miranda* until Hilliard formally arrested him, even though "Appellee was required to remain at the scene pursuant to an investigative stop conducted by Hilliard."[86]

## HOLDING

Because we are bound by the controlling precedent of *State v. Stevenson*,[87] we hold that when Appellee, as the driver of the vehicle, was involved in an accident and when the person injured knew him and was his passenger, he was not required to comply with the statutory provisions that require him to stop, to provide information, and to render aid. We further hold that Appellee was required to remain at the scene, not because of article 6701d or because he was in custody, but pursuant to an investigative stop conducted by Hilliard.

The trial judge found that Appellee was deprived of his liberty to an extent that triggered the protections of *Miranda.* Consequently, Appellee was entitled to *Miranda* warnings. Additionally, the interplay of sections 43 and 47 of article 6701d required Appellee's report to Hilliard be excluded from evidence. Upon instruction of the court of criminal appeals, however, we reverse the order of the trial court and remand this case to the trial court for further proceedings.

DAY, J. concurs without opinion.