02-09-375 THRU 278-CR
















 

 

 

COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT WORTH

 

NOS. 02-09-00375-CR
           02-09-00376-CR
           02-09-00377-CR
           02-09-00378-CR

 

 


 
 
 JOHN ALLEN CROSTHWAIT
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 THE STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM CRIMINAL
 DISTRICT COURT NO. 4 OF TARRANT
COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

I. 
Introduction

          In two points, Appellant John Allen Crosthwait appeals his convictions and punishment for
possession of child pornography and possession with intent to promote child
pornography.  See Tex. Penal Code Ann. § 43.26(a), (e) (Vernon 2003).  We affirm.

II.  Factual and Procedural History

          A tip from America Online (AOL) to the
National Center for Missing and Exploited Children about an image of child
pornography being transmitted from a Texas-based AOL account eventually led to a
jury finding Crosthwait guilty of three counts of possession
of child pornography and five counts of possession of child pornography with
intent to distribute.[2]  The jury assessed punishment at ten years’
confinement for each possession conviction and twenty years’ confinement for
each possession-with-intent-to-distribute conviction.  The trial court sentenced him accordingly,
setting the ten-year sentences to run concurrently with each other but
consecutively to the twenty-year sentences, which run concurrently with each
other.  This appeal followed.

III.  Challenge to Facial
Unconstitutionality

          In his first point, Crosthwait argues that penal code section 43.26 is facially
unconstitutional because it is vague and overbroad, constituting a violation of
the First Amendment.  However, he acknowledges
that he did not challenge the facial constitutionality of the child pornography
statute at trial.  Contending that the
court of criminal appeals’s statement in Karenev v. State, that “a defendant may not
raise for the first time on appeal a facial challenge to the constitutionality
of a statute,” is dicta, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009), he claims
that he may now raise this challenge for the first time on appeal.  See id.

We
disagree.  In Karenev, the majority expressly
addressed the question of “whether a facial challenge to the constitutionality
of the harassment statute may be raised for the first time on appeal” and
expressly answered the question, “We hold that it may not.”  Id. at 429.  And in a
more recent case, the court cited to Karenev for this proposition.  See,
e.g., Estrada v. State, 313 S.W.3d 274, 306 (Tex. Crim. App. 2010) (citing Karenev for the
proposition that “defendant may not raise for first time on appeal a facial
challenge to constitutionality of a statute” and re-emphasizing rule by
observing that Estrada failed to preserve his facial constitutional challenges
for review).  Because we are bound by court
of criminal appeals precedent, we conclude that Crosthwait
failed to preserve his first point for our review.  See Tex.
R. App. P. 33.1; State v. Stevenson,
993 S.W.2d 857, 867 (Tex. App.—Fort Worth 1999, no pet.) (“Because a decision
of the court of criminal appeals is binding precedent, we are compelled to
comply with its dictates.”); see also
Gonzales v. State, 190 S.W.3d 125, 130 n.1 (Tex. App.—Houston [1st Dist.]
2005, pet. ref’d) (“[A]s an intermediate appellate
court, we must follow the binding precedent of the Court of Criminal Appeals.”),
cert. denied, 549 U.S. 1000 (2006).  We overrule Crosthwait’s
first point.

IV.  Punishment Evidence

          In his second point, Crosthwait complains that the trial court abused its
discretion by admitting evidence depicting bestiality during the punishment
phase of his trial because the degree of unfair prejudice of the evidence
substantially outweighed its probative value.  Crosthwait argues that
the bestiality evidence had no probative value, that it was
inflammatory and inherently prejudicial, that it served to distract the jurors
from the proper issue—punishment for his child pornography-related convictions—and
that presenting evidence on actions unrelated to the charged offense was a
waste of time.  See Tex. R. Evid. 403.

Even if
the trial court abused its discretion by admitting the bestiality images, which
we do not hold,[3] we hold
that error, if any, was harmless.

In
assessing harm for an evidentiary error, we review whether the error could have
affected Crosthwait’s substantial rights.  See Tex.
R. App. P. 44.2(b); Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim.
App. 2001).  A substantial right is
affected when the error had a substantial and injurious effect or influence in
determining the jury=s verdict.  King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997) (citing Kotteakos v.
United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall v. State, 961 S.W.2d 639, 643
(Tex. App.—Fort Worth 1998, pet. ref’d). 
Conversely, an error does not affect a substantial right if we have Afair
assurance that the error did not influence the jury, or had but a slight
effect.@  Solomon, 49 S.W.3d at
365; Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In making
this determination, we review the record as a whole, including any testimony or
physical evidence admitted for the jury=s
consideration, the nature of the evidence supporting the verdict, and the
character of the alleged error and how it might be considered in connection
with other evidence in the case.  Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  We may also consider the jury instructions,
the State=s theory
and any defensive theories, whether the State emphasized the error, closing
arguments, and even voir dire, if applicable.  Id. at 355B56.

A.  Voir Dire and Guilt-Innocence Phase Opening Statements and
Evidence

There was
no mention of bestiality during voir dire or either
side’s opening statements.  Rather, the
State focused on what it referred to as Crosthwait’s
“dirty little secrets,” focusing exclusively on child pornography, and the
defense encouraged the jury to “[k]eep your eye on
what the State doesn’t know.”

Dallas
Police Detective Gregory Dugger testified that he
received a tip, originating with AOL, about transmission of an image of child
pornography.  He executed a search
warrant with AOL for its records, viewed the images, determined that they
depicted a child under the age of eighteen, and determined that the
transmitting account belonged to John Crosthwait, 431
East Lamar Boulevard, Arlington, Texas.  The
billing address of the phone number associated with the account, 817-303-5159, was
“John Crosthwait, 431 E. Lamar Blvd Apt 101,
Arlington TX”; the service address was “Kat Smokey, 431 E. Lamar Blvd Apt 101,
Arlington TX.”

State’s
Exhibits 1A, 1B, 1C, and 1D, containing excerpts of AOL records[4]
and the images at issue, were admitted in evidence and published to the jury
during Detective Dugger’s testimony, as was State’s
Exhibit 2, Southwestern Bell’s records for Crosthwait’s
account.  Detective Dugger
described the images of children who appeared to be under the age of
eighteen:  one contained two girls
engaged in the lewd exhibition of their genitals and four more contained lewd
exhibitions of a child’s or children’s genitals.  The file name of the image associated with
State’s Exhibit 1B was YN-023.jpg.  State’s
Exhibit 1C contained file names YN-003.jpg, YN-004.jpg, and YN-006.jpg.  State’s Exhibit 1D contained file name
YN-021.jpg.[5]  Detective Dugger
cross-referenced the Southwestern Bell phone records, which showed that on
December 9, 2007, the phone line was used for three hours, starting at 10:29
p.m., with the AOL records, which showed that KScookiemonster
was logged in to AOL using phone number 817-303-5159 during that time and that
this was also when the emails in State’s Exhibits 1B, 1C, and 1D were sent.

Arlington
Police Detective Huey Nguyen, a certified computer forensic examiner, testified
that he received the file from Detective Dugger,
confirmed Crosthwait’s address and phone number, and then
acquired and executed a search warrant for Crosthwait’s
apartment.  Upon entering Crosthwait’s apartment, he saw a laptop computer in the
living room, surrounded by numerous pieces of digital media—floppy disks, CDs,
DVDs.  Crosthwait
told the police that the laptop was his, that he had a dial-up internet
connection, and that he lived alone.  When
asked about his subaccount names, Crosthwait admitted
to his main account and to LostNtheBranches, his
genealogy account, but not the others.  The
police seized Crosthwait’s laptop, external floppy
drive, and floppy disks, which were entered in evidence.

Detective
Nguyen analyzed the computer hard drive and found the AOL emails,
admitted as State’s Exhibits 12, 13, and 14.[6]  He testified that emailing out images of child
pornography is a way of promoting child pornography by dissemination, and he
concluded, from finding the images in the AOL area of the computer, that the
images were stored in and sent from that computer.  He found additional images of child
pornography on the computer, stored under the user profile of “Owner/P folder;
subfolder, lesbians,” which were admitted as State’s Exhibit 15 and published
to the jury.[7]  Other subfolders in Crosthwait’s
laptop’s P folder were named “animal,” “nude,” and “clothed.”  This is the first mention of the “animal”
subfolder.

With
regard to the floppy disks, Detective Nguyen testified that State’s Exhibit 16,
file 6.bmp, contained what appeared to be a child under the age of eighteen and
the lewd exhibition of the child’s breast below the top of the areolae.  This file
appeared on the laptop around five times.

Crosthwait went to the Arlington police station for an
interview on May 29, 2008, which was videotaped and published to the jury as
State’s Exhibit 18.  In the video, Crosthwait confirmed his address, expressed that he did not
know what was going on, and repeatedly denied any knowledge of KScookiemonster, stating “It’s not mine.”  He stated that the only “graphic content” he
could remember was a video someone sent him called “The Camel Toe Song.”  He asked several times to see the images
recovered from his emails and from the laptop, and he asserted several times
that none of the images on the laptop, to his knowledge, involved anyone under
age eighteen.  He stated that if they
were younger than eighteen, he was sorry, but he did not look at them much and
they did not appear younger than co-eds to him.  And he stated that a stranger gave him a
compact disk of photos (a “party disk”) when he lived in Austin, around eight
years ago.  After the police left the
interview room, Crosthwait stated, “What a mess.  Kansas City Cookiemonster,
geez. . . .  It ain’t mine. . . . I don’t know who that is.  Who the fuck is creating
these screen names and shit.  Damn
it, damn it, damn it . . . It’s causing me a lot of headaches.”

In the
video, Crosthwait said he was burglarized three times
in a year, explaining that this was why he had the laptop for only a few months,
and he theorized that he must have been hacked—that someone probably obtained
his password and created the subaccounts. 
However, as the video showed, and as Detective Nguyen testified, Crosthwait was unable to point to anything realistic that
would show his computer had been hacked, based, among other things, on the type
of internet connection he had.  Specifically,
Detective Nguyen testified that it is almost impossible to hack a dial-up modem,[8] and
he did not find anything in the AOL records to show that Crosthwait
had ever made a complaint about hacking.

State’s
Exhibit 19 shows Crosthwait’s AOL screen, with some
of Crosthwait’s different user names:  Crosthwait, LostNtheBranches, and KScookiemonster.
 Additionally, the “buddy list” in the
main Crosthwait account matched the “buddy list” in the
KScookiemonster subaccount.[9]  Detective Nguyen testified that emailing
child pornography is called collecting or trading.  State’s Exhibit 21, an AOL record of an email
from KScookiemonster to crazydancer2006
on December 9, 2007, states, “it’s a trade. 
don’t know her. 
im [sic] sorry,usually i do first.  very pretty.”  This email was sent around the same time as
the child pornography emails.

B. 
Closing Arguments—Guilt-Innocence Phase

During
closing arguments, the State argued that the evidence showed that Crosthwait possessed and promoted child pornography via
email, stating, “[I]t’s not this defendant’s dirty
little secret anymore because we all know about it.”  Defense responded that there was no direct
evidence that he was the only person who ever had control over the computer,
that there was no evidence that he knew some of the images were of children,
and that the police did a bad job of investigating.

C. 
Punishment Phase Evidence

After the
jury found Crosthwait guilty on all counts, Detective
Nguyen testified during the punishment phase about the additional images that
he found on Crosthwait’s laptop and in Crosthwait’s apartment: 
images from the subfolder “lesbians,” which were admitted as State’s
Exhibit 22; additional images found on the floppy disk that contained child
pornography, admitted as State’s Exhibit 23; “child erotica” in the form of clothed
images of children, from the P folder on Crosthwait’s
laptop, in the subfolder labeled “clothed,” admitted as State’s Exhibit 24;
various VHS cassettes and DVDs with names that referred to underage or teen
participants, including “Bald Beavers,” “My First Sex,” “Amateur Lesbians,”
“Barely Learning,” and “Learning to Lick”; and additional images of child pornography
recovered from AOL’s records of email sent from the KScookiemonster
subaccount.

Detective
Nguyen then testified that he found “pornographic images involving what you
would call bestiality, humans having sexual intercourse with animals,” in
folder P, subfolder “animals.”  These
images were admitted as State’s Exhibit 25 over Crosthwait’s
objections.  This was the only mention of
the bestiality images, and it was followed by additional testimony by Detective
Nguyen that he recovered approximately 300 images of child pornography on Crosthwait’s laptop and found around 176 images of adult
pornography on the laptop.

Detective
Nguyen further testified about deleted emails recovered from Crosthwait’s laptop from Crosthwait’s
KScookiemonster, KaNsAsCiTy1993,
and Nfe4sAkPo9 accounts.  These emails were admitted as State’s Exhibit
37.  They were sent to or received from Xxxhottie138, Ohellzbellz, and
others on Crosthwait’s buddy list.  All of these emails had attachments.  Message 128, received by Crosthwait
from Ohellzbellz, included the message “Here’s a
little taste of my step-daughter . . . .”  Message 196, sent by Crosthwait
to xxxhottie138, asked, “How young you got?”  And Message 341, sent by Crosthwait
to Chavezfour, stated, “She’s an adult, but cute.”

Crosthwait testified that, with regard to his possession of
the child pornography images, “Some of the stuff was off the party disk, I
don’t remember all of them.  The rest
were from people who wanted to trade with me, and I guess it just snowballed.”  He stated that he thought the people who sent
him pictures were his friends, that he did not have a lot of friends, and that
he had never met any of the people who sent the images to him in “real life.”[10]  He stated that he had never been with any of
the children in real life and that he did not and would not take any of the
pictures of children.

Crosthwait admitted on cross-examination that KScookiemonster and the other subaccounts were his.  He stated that he did not think, at the time,
that the photographs were of children but acknowledged that some of the
photographs contained individuals that were definitely underage.  On cross-examination, Crosthwait
gave the following testimony:

Q.  So you were actively seeking images of child
pornography over the Internet; isn’t that right?

 

A.  No. 
What I prefer are coeds.

 

Q.  What you collected was children; isn’t that
true?

 

A.  Some of them are evidently, yes, and I’m
deeply sorry.

 

Q.  300 images, correct?

 

A.  If he’s right, yes.

 

Q.  Sir, are you aware of the fact that someone
is taking those pictures somewhere in the world?

 

A.  I guess they are, yes, okay.

 

Q.  Are you aware that real little children, real
little children are being harmed by that?

 

A.  I’ve never thought about that.

 

D. 
Closing Arguments—Punishment Phase

During
closing arguments, the State argued that Crosthwait
was only sorry that he had been caught, that 300 images of child pornography
warranted the maximum for each conviction, and that Crosthwait
was not a good candidate for community supervision.  Defense responded that Crosthwait
was an excellent candidate for community supervision, that some of the images
were not children, that Crosthwait
was just the end-user, and that just because he was sorry that he was caught
did not also mean that he was not sorry that he did it.  The jury assessed the maximum punishment for
each conviction.

E. 
Analysis 

Given the
volume of child pornography-related evidence considered by the jury in this
case and the lack of emphasis that the State placed on the bestiality images
from Crosthwait’s laptop, we cannot say that the
error, if any, had a substantial and injurious effect or influence in
determining the jury=s verdict.  See
King, 953 S.W.2d at 271; Coggeshall,
961 S.W.2d at 643. 
That is, the evidence during guilt-innocence overwhelmingly supported
the jury’s determination that Crosthwait possessed
and promoted child pornography.  Because Crosthwait testified during the punishment phase, the jury
had the opportunity to directly judge his credibility, his admission that the
subaccounts at issue were his, and his excuses for his
behavior.  And by the time the single
exhibit containing the bestiality images was admitted, the jury had already
been forced to endure a significantly greater amount of child pornography images
throughout the guilt-innocence phase and during the punishment phase.  See Motilla, 78 S.W.3d
at 355.

Furthermore,
the trial court included an extraneous offense instruction in the punishment
charge, ordering the jury that it could not consider extraneous offense
testimony for any purpose unless it found and believed “beyond a reasonable
doubt that the defendant committed such other acts.”  And the State’s overall theory (Crosthwait had “dirty little secrets” and was not a good
candidate for community supervision) did not address the bestiality images.  Finally, the State did not mention their
presence in its closing arguments.  See id.
at 355B56.  Therefore, we conclude that, on these facts, Crosthwait’s substantial rights could not have been violated,
and we overrule his second point.

V. 
Conclusion

          Having overruled both of Crosthwait’s points, we affirm the trial court’s judgments.

 

 

                                                                             
 
 
 
 
 
 
 
 PER CURIAM

 

PANEL:  
 
 
 
 
 
 
 MCCOY, 
 
 
 
 
 
 MEIER, and 
 
 
 
 
 
 GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  December
16, 2010











[1]See Tex. R. App. P. 47.4.





[2]Because
Crosthwait complains that improper extraneous offense
evidence admitted during the punishment phase of the trial had a substantial
and injurious effect or influence on the jury’s verdict, we will review the
record in greater detail below as part of our analysis.





[3]Section
3(a)(1) of article 37.07 of the code of criminal procedure permits evidence to
be offered during the punishment phase

as to any matter the court deems
relevant to sentencing including but not limited to . . . the circumstances of
the offense for which [defendant] is being tried, and . . . any other evidence
of an extraneous crime or bad act that is shown beyond a reasonable doubt by
evidence to have been committed by the defendant or for which he could be held
criminally responsible, regardless of whether he has previously been charged
with or finally convicted of the crime or act.

Tex. Code
Crim. Proc. Ann. art. 37.07, §
3(a)(1) (Vernon Supp. 2010).  A person commits an offense if, knowing its
content and character, he promotes or possesses with intent to promote any
obscene material.  Tex. Penal Code Ann. § 43.23(c)(1)
(Vernon Supp. 2010).  “Obscene” means
material that depicts patently offensive representations of ultimate sexual
acts, including sexual bestiality.  Id. § 43.21(a)(1)(B)(i) (Vernon 2003).





[4]Crosthwait had the following screen name subaccounts
associated with his main AOL account:  Crosthwait, LostNtheBranches, KScookiemonster, TXCaveCrawler, DaRIA186, Marianneupstairs, Crusader78852, Houstonboundvet, BoredNaomi, Poiu5432, Doodlebug85586, Nfe4sAkPo9,
KaNsAsCiTy1993, Daniel24Johnson, and Mudsucker87.  The image attachment in State’s Exhibit 1B
was sent from the KScookiemonster account to another
AOL user, crazydancer2006, as were the images in State’s Exhibits 1C and
1D.  AOL terminated Crosthwait’s
account based on the transmission of child pornography.





[5]These
are the file names associated with Crosthwait’s
indictments for possession of child pornography with intent to promote by
dissemination.





[6]Detective
Nguyen explained that the exhibits were from the computer’s hard drive file
path, which showed

within the
latest installation of AOL, . . . in the backup under the screen name personal
file cabinet or the folder for the screen name, there’s a deleted message
stored there.  That deleted message was
sent from KScookiemonster to crazydancer2006
on the date of 12-9-2007.

The recovered emails contained
the attachments of the images at issue in this case.





[7]Detective
Nguyen testified that State’s Exhibit 15 depicted underage females engaged in
sexual acts:  one image depicted a child
engaging in masturbation and one showed two girls kissing.  He also found personal images of Crosthwait in the owner profile.





[8]Detective
Nguyen explained, 

To be hacked, you have to have some
kind of connection to the computer before you can have a connection coming
out.  So if dial-up is his only
connection to the Internet, there’s no way that any kind of hacker would have
accessibility to that computer until it was dialed up and some sort of
connection.  Also the numbers for going
out on dial-up all return to Mr. Crosthwait, the
817-303-5159 number.





[9]Crosthwait’s “buddies” included Xxxhottie138,
Ohellzbellz, and Chavezfour.





[10]In addition to his
testimony during the punishment phase, Crosthwait
brought his former leasing agent to testify that Crosthwait
had been a good resident and did volunteer work and a Tarrant County probation
officer to testify about how community supervision would work.