COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

SERGIO CALDERON,                                                          No. 08-09-00315-CR

§

      Appellant,                                                          Appeal from

§

v.                                                                                      County Court at Law No. 1

§

THE STATE OF TEXAS,                                                    of El Paso County, Texas

§

      Appellee.                                                          (TC # 20080C14983)

§

## O P I N I O N

Sergio Calderon was convicted by a jury of driving while intoxicated. In accordance with the State's plea offer, the court assessed his punishment at 180 days in jail, but suspended the sentence and placed him on community supervision for fifteen months. For the reasons that follow, we affirm.

### FACTUAL SUMMARY

El Paso Police Officers Eduardo Castañon and Cristobal Herrera observed Appellant's vehicle stopped in an oncoming traffic lane at 1:30 in the morning. When they approached the vehicle, the officers saw Appellant slumped over the steering wheel, apparently asleep. The engine was running and the gear shift was in drive, but Appellant had his foot on the brake pedal. Castañon and Herrera pounded on the windows and yelled for him to wake up. When Appellant awakened, Officer Castañon instructed him to put the vehicle in park. According to the officers, Appellant appeared disoriented and began fumbling with a cell phone, the windshield wipers, and other vehicle controls. He eventually put the vehicle in park and unlocked the door. Officer Castañon reached in to take the key out of the ignition and immediately smelled alcohol on Appellant. He asked

Appellant to step out of the vehicle.  When Appellant did so, he stumbled to the point of almost falling.  Officer Castañon noticed that he had glossy, bloodshot eyes.  The recording device in the officers' car was not capable of recording sound, so they called for another officer to bring her car, which had a functioning audio and video recorder.  While waiting for the other car to arrive, they made Appellant stand with his hands on their patrol unit for approximately ten minutes.  Once the other car arrived, Officer Castañon conducted three field sobriety tests and concluded that Appellant was intoxicated.  At that point, Appellant was formally arrested.

In addition to Officer Castañon's observations, Officer Herrera testified that he smelled alcohol, noticed that Appellant had bloodshot eyes and slurred speech, and saw him fail two of the three field sobriety tests.  The third officer also observed that Appellant was unsteady on his feet and that Officer Castañon had to help him stand.

## ADMISSION OF OUT-OF-COURT STATEMENTS

During Castañon's testimony, the State played State's Exhibit 4, the video and audio recording of Appellant's encounter with the officers.  In Issue One, Appellant contends that the trial court abused its discretion by denying his motion to suppress statements made by him and by Officer Castañon.  He argues that the admission of his statements in State's Exhibit 4 violated Article 38.22 of the Texas Code of Criminal Procedure and that the admission of Castañon's narration of the events shown in the exhibit violated the hearsay rule.  The State asserts that these arguments are not preserved for review and that they fail on the merits in any event.

### Preservation of Error

The State initially argues that Appellant's first issue is not preserved because he did not file a motion to suppress.  Although Appellant uses the term "motion to suppress" in his brief, the record does not reflect that he filed a written motion to suppress.  However, Appellant's counsel objected

to the admission of State's Exhibit 4 at trial, specifically "any audio on there, under 38.22 on Miranda and 38.23, and hearsay." Counsel and the trial judge then engaged in a discussion outside the jury's presence, spanning over five pages in the reporter's record, as to whether the recording depicted a custodial interrogation. The court ultimately overruled Appellant's objection, but granted him a running objection. Because Appellant's arguments were raised at trial and ruled on by the judge, they are preserved for review. *See* TEX.R.APP.P 33.1(a); *see also Ross v. State*, 678 S.W.2d 491, 493 (Tex.Crim.App.1984)("When no pretrial hearing is held, the defendant must object when the evidence is offered at trial to preserve error on appeal.").

The State next argues that Appellant has failed to preserve anything for review because his brief does not complain of any specific statement, nor does it discuss the case law regarding custodial interrogations. Within the discussion of Issue One, Appellant's brief contains four pages of quotations from State's Exhibit 4, with Appellant's words in italics and Castañon's words in bold. Thus, the brief adequately identifies the specific statements that were purportedly admitted in error. This portion of the brief also cites several statutes and cases, and applies the cited authority to the facts of the case. *See Swearingen v. State*, 101 S.W.3d 89, 100 (Tex.Crim.App. 2003)(holding that a brief was inadequate because it failed to apply the law to the facts). Although the brief should have addressed whether the recording depicts a custodial interrogation, it is not so deficient that it fails to preserve Appellant's arguments.

*Appellant's Statements*

State's Exhibit 4 depicts Appellant's performance on the field sobriety tests. Appellant's brief cites the following colloquy between Officer Castañon and Appellant, which begins during the final test.

Appellant: Is there any way -- I mean, can I --

Officer: Can you what?

Appellant: I mean, when you're doing this, sir -- I mean, can I call my brother, sir, because --

Officer: No, you can't make any phone calls right now, okay? You're taking this test. After the test, I told you maybe. Okay? We'll see how that -- we'll see how you do that, okay? So did you understand those instructions?

Appellant: I understand that, but I mean --

Officer: Do you understand the instructions?

Appellant: I understand that, but I mean, I'm asking, can I just --

Officer: No. I told you already you can't make any phone calls, okay? No phone calls yet. I told you later on maybe, okay? Okay? I need you to finish this test. All right? Okay. So go ahead. Put your feet together and whichever foot you want to raise, you raise it. Whether or not it's your right or your left, raise it six inches off the ground, point your toe, and count out loud, okay.

Appellant: Do you know Talavera, Joe?

Officer: I don't know who that is. Okay?

Appellant: Do you know a Mike Nuñez?

Officer: I don't know who that is either. Why? What do they matter? Okay? So go ahead. You know that you -- go ahead. Start.

Appellant: Can I do it with my right foot?

Officer: Either foot, whichever one you want. You've got to keep your hands at your side and count out loud, okay?

Appellant: How much time? Ten? Five?

Officer: No, until I tell you to stop. You keep counting until I tell you to stop.

Appellant: No, I'm not going to do that.

Officer: Why not?

Appellant: [Inaudible].

Officer: All right. You're not even counting. Are you -- you're not able to do it? No?

Appellant: I'm trying to. I mean --

Officer: You're not even starting to count or anything, you know.

Appellant: No, you know what -- [inaudible].

Officer: You can't do it?

Appellant: You know what? That's why I'm asking you. I mean -- all I'm asking you is, I mean -- I --

Officer: Okay. Look. I need you to -- I need you to turn around, face away. I'm placing you under arrest for driving while intoxicated, okay?

Appellant: Ah, man.

Officer: Give me your other hand. Step over here in front of the unit.

Appellant: Can I call him?

Officer: You know what? Maybe once we get to the station. We'll see.

Appellant: I mean, I know -- I'm a cop.

After Officer Castañon advised Appellant of his rights, the following colloquy occurred:

Officer: Why are you refusing to give breath, man?

.    .    .

Appellant: Because I'm a cop.

Officer: Because you're a cop?

Appellant: [Inaudible].

Officer: You're not a cop, man.

Appellant: Yes, I am.

Officer: All right. Sit tight, man.

Appellant: [Inaudible].

Officer: What do you want?

Appellant: I mean, can I use the restroom at least?

Officer: We'll see once we get down to the station.

Appellant: [Inaudible].

Officer: Right now? We can't. Where am I going to take you? Out in the middle of the desert? No. You have to wait until you get to a rest room.

Article 38.22 of the Texas Code of Criminal Procedure prohibits the admission of an accused's statement resulting from a custodial interrogation unless the accused was advised of his *Miranda* rights and voluntarily waived those rights. TEX.CODE CRIM.PROC.ANN. art. 38.22, §§ 2(a), 3(a)(2)(West 2005); *see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see also Herrera v. State*, 241 S.W.3d 520, 526 (Tex.Crim.App. 2007)("Our construction of 'custody' for purposes of Article 38.22 is consistent with the meaning of 'custody' for purposes of *Miranda*."). The warnings required by Article 38.22 and *Miranda* only apply when a suspect is in custody. *Herrera*, 241 S.W.3d at 526.

A trial judge's determination regarding custody presents a mixed question of law and fact, meaning that we afford almost total deference to the determination when questions of historical fact turn on credibility and demeanor. *Id.* at 526-27. If the questions of historical fact do not turn on credibility and demeanor, we review the determination *de novo*. *Id.* at 527. In this case, the trial judge determined that Appellant was not in custody based on counsel's legal arguments regarding the undisputed facts. We therefore review the determination *de novo*.

For purposes of Article 38.22 and *Miranda*, a person who is temporarily detained pursuant to an ordinary traffic stop is not "in custody." *See Berkemer v. McCarty*, 468 U.S. 420, 440, 104

S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984); *State v. Stevenson*, 958 S.W.2d 824, 828 (Tex.Crim.App. 1997). But "the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest." *Berkemer*, 468 U.S. at 440 [internal quotation marks omitted]. Thus, a noncustodial traffic stop may escalate into a custodial interrogation. *Stevenson*, 958 S.W.2d at 828.

Appellant points out that Officer Castañon admitted on cross-examination that Appellant was in custody and was not free to leave for approximately an hour before he was advised of his rights. However, Officer Castañon's "unarticulated plan has no bearing on the question whether [Appellant] was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in [Appellant's] position would have understood his situation." *Berkemer*, 468 U.S. at 442.

In *Berkemer*, an officer saw the defendant's car weaving in and out of a lane. *Id.* at 423. The officer pulled the car over and asked the defendant to get out. As he got out of the car, the officer noticed that he was having difficulty standing. Although the officer concluded at that point that the defendant would be charged with a traffic offense and that he was not free to leave, the officer did not communicate this information to the defendant. The officer conducted a field sobriety test and asked the defendant whether he had been using intoxicants. After the defendant answered affirmatively, he was formally placed under arrest. *Id.* The Supreme Court held that the defendant was not in custody for purposes of *Miranda* until his formal arrest. *Id.* at 441-42.

The facts in *Berkemer* are similar to the facts here except that approximately one hour passed before Appellant was arrested, whereas in *Berkemer*, "[o]nly a short period of time elapsed between the stop and the arrest." *Id.* at 441; *see also id.* at 437 ("The vast majority of roadside detentions last only a few minutes."). In *Stevenson*, however, an encounter that lasted approximately one hour was held not to constitute custody. *See* 958 S.W.2d at 829; *see also State v. Stevenson*, 993 S.W.2d 857,

869 (Tex.App.--Fort Worth 1999, no pet.)(pointing out on remand that the defendant was not formally arrested until almost an hour into the investigation).

This case is similar to *Espinoza v. State*, No. 08-05-00241-CR, 2007 WL 179059 (Tex.App.--El Paso Jan. 25, 2007, no pet.)(not designated for publication). In *Espinoza*, as in this case, the police discovered a driver asleep behind the wheel with the car in park and the driver's foot on the brake. 2007 WL 179059, at *1. The police knocked on the car windows and eventually woke up the driver. A strong odor of alcohol emanated from the car. The driver was groggy, incoherent, and slurred his speech. After failing three field sobriety tests, he was arrested. *Id.* Relying on *Berkemer* and *Stevenson*, we held that the driver was not in custody regardless of whether he was free to leave or whether the officer had probable cause to arrest. *Id.* at *3. We likewise conclude in this case that Appellant was not in custody before his formal arrest.

Even if Appellant had been in custody, his statements did not result from an interrogation. For purposes of *Miranda*, "interrogation" refers to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Morris v. State*, 897 S.W.2d 528, 531 (Tex.App.--El Paso 1995, no pet.), *citing Rhode Island v. Innis*, 446 U.S. 291, 300-301, 100 S.Ct.1682, 1689-90, 64 L.Ed.2d 297 (1980). Officers are not interrogating a suspect when they ask him to perform field sobriety tests and instruct him on how to do the tests. *Id.* From a review of the colloquy quoted above, it is clear that Appellant asked most of the questions. The few questions asked by Officer Castañon focused on whether Appellant understood the instructions for the test. Although he twice asked Appellant whether he was able to do the test, these questions did not amount to an interrogation under the circumstances. *See id.* at

532 (asking whether a suspect was "too intoxicated to understand" did not constitute interrogation).[1]

*Officer Castañon's Statements*

Appellant argues that the above-quoted statements by Officer Castañon were inadmissible hearsay. We apply an abuse of discretion standard when reviewing a trial court's decision to admit evidence over a hearsay objection. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex.Crim.App. 2003).

Appellant relies on *Fischer v. State*, in which the Court of Criminal Appeals held that an "officer's factual observations of a DWI suspect, contemporaneously dictated on his patrol-car videotape," were not "admissible as a present sense impression exception to the hearsay rule." 252 S.W.3d 375, 376 (Tex.Crim.App. 2008). In *Fischer*, a police officer repeatedly walked away from the suspect to dictate his observations into his microphone. *See id.* at 377. Immediately after asking the suspect how much he had to drink, for example, the officer told the suspect "to stay where he was, and . . . walked back to his patrol car and dictated into his microphone that [the suspect] had 'glassy, bloodshot eyes' and 'slurred speech'" and "that he had smelled 'the strong odor of alcoholic beverage.'" *Id.* The Court of Criminal Appeals held that "[t]his calculated narrative in an adversarial setting was a 'speaking offense report,'" rather than "the type of unreflective, street-corner statement that the present sense impression exception to the hearsay rule is designed to allow." *Id.* at 376.

This case is distinguishable from *Fischer*. As the State points out, most of Officer Castañon's statements were not offered for the truth of the matter asserted, and thus were not hearsay. *See* TEX.R.EVID. 801(d); *see also Kirk v. State*, 199 S.W.3d 467, 479 (Tex.App.--Fort

---

[1] The discussion above applies to the part of the encounter that occurred before Appellant was arrested and advised of his *Miranda* rights. In his brief, Appellant also quotes the colloquy that occurred after Officer Castañon read him his rights, including the question "Why are you refusing to give breath, man?" Appellant states that the record does not show that he waived his *Miranda* rights. However, an express waiver is not required. *Joseph v. State*, 309 S.W.3d 20, 24 (Tex.Crim.App. 2010). Appellant does not contend that his statements were involuntary.

Worth 2006, pet. ref'd)(holding that a detective's questions were not hearsay because they were admitted to give context to the suspect's replies). The only statements by Officer Castañon that resemble the statements in *Fischer* are his two comments that Appellant was "not even counting" or "not even starting to count." Unlike in *Fischer*, however, these comments were not part of a separate narration that was calculated to inform a future fact-finder about facts that were not already obvious from the videotape. Instead, the comments were made directly to Appellant, as Officer Castañon attempted to determine whether Appellant was going to be able to complete the test. They were unreflective statements, which the present sense impression exception to the hearsay rule allows. *See Fischer*, 252 S.W.3d at 376. We overrule Issue One.

## JURY INSTRUCTION

In Issue Two, Appellant complains that the trial court abused its discretion in denying his request for a jury instruction pursuant to Article 38.23 of the Texas Code of Criminal Procedure. That statute allows the jury to "be instructed that if it believes, or has a reasonable doubt," that evidence was obtained illegally, it "shall disregard any such evidence so obtained." TEX.CODE CRIM.PROC.ANN. art. 38.23(a).

The first step in analyzing a claim of jury-charge error is to determine whether there actually was error in the charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex.Crim.App. 2009). An Article 38.23 instruction is appropriate only if there is a dispute about a specific issue of fact. *Madden v. State*, 242 S.W.3d 504, 509-10 (Tex.Crim.App. 2007). "If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law." *Id.* at 510.

Appellant apparently believes that there was a factual dispute as to whether he was in custody during his encounter with Officer Castañon. In his brief, he argues that "the factual dispute was whether evidence was obtained through custodial interrogation of Appellant without Appellant being

*Mirandized*." He notes that the trial court "admitted evidence based on the State's contention that Appellant was not in custody. As such, a fact question was raised as to the underlying legality of the custodial interrogation . . . ." Appellant does not identify any dispute about the historical facts underlying his encounter with the officers; his complaint relates to the legal significance of those facts. Because Appellant is raising a legal, rather than a factual, dispute, he was not entitled to the Article 38.23 instruction. *See Mbugua v. State*, 312 S.W.3d 657, 669-70 (Tex.App.--Houston [1st Dist.] 2009, pet. ref'd)("A jury may not be instructed under article 38.23(a) to determine whether a person is 'in custody' because such an instruction requires the jury to resolve an issue of law, not of fact."). We overrule Issue Two.

## JURY ARGUMENT

In Issue Three, Appellant argues that the State made three improper closing arguments. First, the prosecutor stated, "When somebody gets behind a vehicle that weighs two tons and they get on the road -- even when there's no alcohol involved, there are a lot of fatalities that are involved when there's a car accident." Second, the prosecutor stated, "You have the right to know that you can take your child to the hospital at 1:30 in the morning, driving on 54, and getting off on the Gateway and know that someone else isn't just going to drive right into you . . . when driving down the road." Third, the prosecutor stated, "You have the right . . . to go to the pharmacy, to visit your relatives, to leave town on vacation or to head to the airport without having to worry that someone else is going to prod into your vehicle at 1:30 in the morning." Appellant contends that these statements introduced facts that were not in the record.

Closing arguments are generally limited to a summation of the evidence, reasonable deductions from the evidence, answers to the arguments of opposing counsel, and pleas for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex.Crim.App. 2000). If an argument

exceeds the permissible bounds of these topics, it still does not amount to reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violates a mandatory statute, or injects new facts harmful to the defendant into the trial. *Id.*

Although it is generally improper to argue facts outside the record, statements of common knowledge are an exception to this rule. *Nenno v. State*, 970 S.W.2d 549, 559 (Tex.Crim.App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720 (Tex.Crim.App. 1999). It is common knowledge that car accidents, including those caused by drunk drivers, can cause fatalities. *See English v. State*, 828 S.W.2d 33, 38 (Tex.App.--Tyler 1991, pet. ref'd)("It is common knowledge that in this state each year, many people are killed or seriously injured in automobile collisions as a result of alcohol-intoxicated drivers . . . . It cannot be denied that a motor vehicle operated by an intoxicated driver instantly becomes an instrument capable of inflicting death or serious bodily injury on any person, who by chance comes within its path."). Accordingly, the prosecutor's first statement was not improper.

Counsel have "wide latitude without limitation in drawing inferences from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith." *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex.Crim.App. 1988). The record in this case establishes that Appellant was asleep in his vehicle, which was stopped in an oncoming traffic lane with its engine running and its transmission in drive gear. The prosecutor's second and third statements were reasonable deductions from this evidence. *Cf. Porter v. State*, 601 S.W.2d 721, 723 (Tex.Crim.App. [Panel Op.] 1980)(holding that statement that "people can be killed" was a reasonable deduction from evidence that a firearm was used).

The second and third statements also constituted proper pleas for law enforcement. In comparison, in another driving while intoxicated case, the prosecutor asked the jury to consider "the

people who have to travel our highways" and that "[w]hen you and your family are on these highways driving you can't help but sometimes wonder if some drunk driver is going to hit you, run over you and kill you." *Strahan v. State*, 172 Tex.Crim. 478, 358 S.W.2d 626, 627 (Tex.Crim.App. 1962). The Court of Criminal Appeals held that these arguments were proper pleas for law enforcement. *Id.*; *cf. Porter*, 601 S.W.2d at 723 (holding that statement that "people can be killed in armed robberies" was proper plea for law enforcement in aggravated robbery case); *Pittman v. State*, 9 S.W.3d 432, 434 (Tex.App.--Houston [14th Dist.] 1999, no pet.)(holding that prosecutor was making a proper plea for law enforcement when he suggested seven times that the defendant, a DWI recidivist, would eventually "kill someone"). We overrule Issue Three and affirm the judgment of the trial court.

May 4, 2011

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)